## MASAJI NAKAMURA *v.* ASSOCIATED OIL COMPANY, A CALIFORNIA CORPORATION.

### No. 1999.

ARGUED APRIL 6, 1931.                    DECIDED MAY 11, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is an action in tort for damages for the death of plaintiff's minor son who was killed April 1, 1930, at the junction of Kalakaua avenue and John Ena road, Honolulu, in a collision between the motorcycle on which plaintiff's son was then riding and defendant's motor truck No. 54-914. The accident is alleged to have been proximately caused by the negligence of the defendant through its servant, the driver of said truck, in making a left turn from Kalakaua avenue into John Ena road. Acts of negligence on the part of the driver of the motor truck alleged in the declaration were, among others, cutting the corner to the left of the median line of John Ena road in violation of the traffic ordinances of the City and County of Honolulu and in not having the motor truck under control. Verdict and judgment in the trial court were for the plaintiff in the sum of $5000. The case is before us upon defendant's writ of error.

Defendant's assignment of errors contains ten specifications. In the briefs of defendant (plaintiff in error) these assignments are grouped as presenting three questions of law, namely: "(1) Is there more than a scintilla

of evidence in the record to support the verdict? (2) Is the violation of a traffic ordinance negligence per se? and (3) Is the verdict of $5000 excessive?" A fourth question presented by assignment No. 5, which is hereinafter set forth *in extenso,* is argued in the briefs. These questions will be considered in the order in which they are above enumerated.

1. "Is there more than a scintilla of evidence in the record to support the verdict?" The transcript shows that there was testimony to the effect that at about noon on April 1, 1930, the Associated Oil Company's Moreland motor truck No. 54-914 was being driven on the makai side of Kalakaua avenue toward town by Harry G. Nobriga, an employee of the defendant company; that it was a large truck weighing without a load 8450 pounds; that it was travelling at a rate of speed of twenty or more miles an hour; that on reaching the junction of Kalakaua avenue and John Ena road it turned suddenly to the left toward the latter thoroughfare, cutting the corner and passing about eight feet to the left of the traffic button at the junction of said streets. The driver's own testimony was to the effect that just about as he got to the center of the turning and was about to straighten out on John Ena road he saw the motorcycle coming at a high rate of speed up Kalakaua avenue on the side makai of the middle planted strip, the rider bending forward with head down as if he were racing. The driver further testified that in an effort to avoid collision he swung to the left and increased his speed. There is evidence that the collision took place on Kalakaua avenue at said junction at a point about on a line with the makai curb of Kalakaua avenue and to the truck driver's left of the median line of John Ena road. Other evidence was introduced tending to show that the motorcycle, head-on, struck the truck just forward of the rear right wheel and about eight feet forward of the rear

end of the truck; that the impact was such that the motor-cycle stuck to the truck and that the momentum of the truck carried the latter forward with set brakes about forty-nine feet beyond the point of collision. The boy was taken to the Queen's Hospital and died shortly thereafter as a result of injuries received in the collision. This evidence in the circumstances was sufficient to justify submission to the jury of the question as to whether or not the defendant, through its driver, was guilty of negligence in cutting the corner as above defined, in attempting to usurp the boy's right of way, in not having sufficient control of its car at the time and in not stopping or slowing down when the driver perceived the boy's peril, and as to whether or not any one or more of these acts or omissions of negligence (if found by the jury) was the proximate cause of the accident resulting in the death of the boy; and such evidence was sufficient to support a verdict for the plaintiff.

Under question No. 1 defendant in a subhead asserts that "there is no evidence to support plaintiff's contention that the deceased had the right of way." What defendant has argued under this subhead is that section 423, ordinances of the City and County of Honolulu, did not as a matter of law give the deceased the right of way. This question is presented, if at all, by assignment No. 9 to the giving of plaintiff's requested instruction No. 5 hereinafter quoted at length, as to the right of way at street crossings under section 423. Section 423 of the ordinance as set forth in instruction No. 1 is as follows: "Right of way at crossings or intersections. At any highway intersection a person driving, operating, propelling or in charge of any street car, vehicle, or riding an animal, shall have the right of way over a person driving, operating, propelling or in charge of a vehicle or riding an animal, approaching him on such intersection from the left, except-

ing only in cases in which a police officer shall be in actual charge at such intersection." There was testimony as above set forth that at the junction of John Ena road the truck driver was crossing Kalakaua avenue and the course of the boy from the latter's left. This was sufficient to bring the truck driver within the provision of section 423 above quoted.

Another proposition set forth in a separate subhead under question No. 1 is that "the court erred in failing to order a verdict for the defendant because of the contributory negligence of the deceased." This is parenthetically averred to be presented by assignments Nos. 6 and 8. Assignment No. 6 is as follows: "The plaintiff having rested and defendant having moved for a directed verdict on the ground there was no evidence of negligence to go to the jury, the court erred in denying defendant's motion for a directed verdict (Tr. pp. 86-87)." The motion for a directed verdict was oral and is thus set forth on pages 86 and 87 of the transcript: "Mr. Anthony: At this time I move for a directed verdict. I would like to argue the matter, no evidence on which this case should be sent to the jury, no evidence as to negligence on the part of this defendant or any of its servants. There is no evidence that there has been any violation of the ordinances,—that is the ordinance in particular as to the turning; no evidence as to the rate of speed of the motorcycle, whether or not it was physically possible for this truck to have avoided the collision, and the only evidence in the case is that the motorcycle crashed into the side of the truck. * * * The Court: The motion for directed verdict is denied. Mr. Anthony: Exception. The Court: Exception noted." Assignment No. 8 is hereinafter discussed under question 2. Neither assignment, as the record shows, presented a question of contributory negligence.

Under another subhead defendant avers that "the

court erred in instructing the jury upon the doctrine of the last clear chance." This reference is to assignment No. 10, reciting exception to the giving of plaintiff's requested instruction No. 6. Said instruction reads as follows: "If you believe from the evidence and the preponderance of the same that the driver of the defendant's oil truck knew or could have known by the exercise of ordinary care that the son of the plaintiff was approaching the intersection of Kalakaua avenue and John Ena road, and was travelling in an easterly direction, and within a reasonable course near the southerly curb of John Ena road, and that such boy might in the exercise of ordinary conduct continue his course of travel across the intersection so that an attempt on the part of defendant's driver to turn the oil truck to the boy's left from a course going in a westerly direction to a course going in a southerly direction and into John Ena road would imperil the boy, then it became the duty of defendant's driver to take such steps for the safety of the deceased son as ordinary prudence might suggest; and if the jury believe that the defendant's driver failed in such duty and in consequence of such failure the deceased son met with his death, such failure, if any, would constitute negligence." The driver's testimony, as hereinbefore appears, was in effect that he saw the boy before the accident, saw that his head was down in a racing position, and that he was approaching at a high rate of speed. The driver accelerated his speed and swung to the left. The question as to whether or not the boy was guilty of contributory negligence was left to the jury by an agreed instruction. But even if he had been thus guilty that fact alone would not preclude the plaintiff's right of recovery if under all the circumstances the defendant could by reasonable care have avoided the accident. See *Hughes* v. *McGregor,* 23 Haw. 156, 159. Whether or not in the instant case reasonable care would have re-

quired the driver, after seeing the boy's peril, to stop or slacken speed instead of going faster and swinging to the left was a question proper to be considered by the jury in fixing blame for the accident. "One may be liable for injuring another even though the latter has negligently placed himself in a position of danger, and even though it was possible for him, if he had chosen the right course, to extricate himself from such position in time to avoid injury, if it was apparent or ought to have been apparent to the former that the course actually pursued was not likely to be effectual." From the syllabus in *Ferreira* v. *Honolulu R. T. & L. Co.,* 16 Haw. 615. Applied to the evidence above referred to, there was no error in the giving of plaintiff's requested instruction No. 6.

2. "Is the violation of a traffic ordinance negligence per se?" This question is not directly presented by any one or more of the defendant's ten assignments of error. Assignment No. 8 is to the giving of plaintiff's requested instruction No. 1. Instruction No. 1 thus referred to is a recital of sections 418, 423, 412, 414 and 401 of the revised ordinances of the City and County of Honolulu, the above numbered sections being traffic regulations. At the trial it was mutually stipulated with the court's approval that the ordinances in force at the time of the accident might be admitted, and it was submitted by counsel for the defendant that they be read in the form of instructions. Assignment No. 9 is to the giving of plaintiff's requested instruction No. 5: "If you believe from the evidence in this case and the preponderance of the same that defendant's employee driving defendant's oil truck ignored the rule of the road set forth in section 423 of said revised ordinances, which gives the right of way at crossings or intersections to the driver or propeller of a vehicle over traffic approaching him on his left, and that defendant's employee unreasonably sought to take the

right of way from the plaintiff's son in disregard of such rule of the road, and unreasonably sought to cross the course of travel of the plaintiff's son by approaching the boy on his left in the course of turning the oil truck, while the plaintiff's son was proceeding according to the rule of the road defined in such section (if the boy was so proceeding), and that such action by the driver of the oil truck was the proximate cause of the injuries to the plaintiff's son, * * * then you may consider these facts (if such facts they be) in determining the liability of the defendant (if any) for the resultant accident." Neither in this nor in any other instruction was the jury charged that violation of section 423 or of any other traffic ordinance constituted negligence *per se.* By agreement the jury was expressly charged to the contrary in defendant's requested instruction No. 7 as follows: "If you find from the evidence that the deceased, Harry Nakamura, or the driver of the defendant's truck violated any ordinance of the City and County of Honolulu at the time this accident occurred, this is not of itself negligence, but may be considered together with all the facts in the case as having a bearing on the question of the defendant's negligence, if any, or the deceased's contributory negligence, if any." Assignments 8 and 9, therefore, do not present question No. 2, nor is it elsewhere presented by the assignments.

3. "Is the verdict of $5000 excessive?" The injury and *ad damnum* allegations of plaintiff's declaration are as follows: "That plaintiff herein has been greatly injured and damaged by the carelessness and negligence of the defendant aforesaid, and has been compelled to contract debts and expend large sums of money for the medical care and attention and other services and expenses connected with the care and maintenance of the said Harry Nakamura at the Queen's Hospital from the time of his

injury aforesaid to the time of his death aforesaid, and for funeral expenses for the funeral and burial of the said Harry Nakamura and has been and will be deprived of the pecuniary value of the services and earnings and acts of kindness and attention of said Harry Nakamura during the period of his minority, and has been otherwise greatly injured and damaged and has been deprived of the said son, Harry Nakamura, and the said plaintiff has been directly and proximately injured and damaged by the carelessness and negligence aforesaid of the said defendant, in the total sum of $10,000.00." Of the damages thus claimed proof was introduced as to funeral expenses and as to the loss of Harry Nakamura's wages, less cost of maintenance for the remaining period of his minority. Applied to the evidence plaintiff's requested instruction No. 15 and defendant's requested instruction No. 5 were given to the jury by agreement as follows: Instruction No. 15: "The court instructs you that in case you find a verdict for the defendant under the evidence and the instructions of the court, it will not be necessary to consider the question of damages. But if you find for the plaintiff, then as to the amount of damages and as a measure of the same, you are at liberty to take into consideration the pecuniary value of the child's services during his minority and the costs and expenses reasonably incurred by the father on account of the injuries, less the usual and reasonable expenses of caring for and rearing the child, including the cost of board, lodging, clothing and reasonable incidental expenses until the boy should reach the age of 20 years,—all of which pecuniary value to be reduced to its present worth. The pecuniary value referred to in this instruction would include not only what the child might earn during the remainder of his minority," (striking the following words: "but also the value of his services in the family, in-

cluding acts of kindness and attention,") "and in considering such pecuniary value of the services of the minor, you are at liberty also to consider under all the evidence in this case, the probability or improbability, if any, of the value of such services increasing or decreasing as the boy grew older, more mature, and whether or not he would have become more or less able to perform greater services and command higher wages or remuneration as he grew older." Instruction No. 5. "If you find a verdict for the defendant in this case it will not be necessary to consider the question of damages. But if you find in favor of the plaintiff then you may consider the measure of damages, but you must exclude from your consideration all elements of pain or suffering by the boy and also all elements of mental suffering or pain or loss of the boy's companionship to the father. But you may consider the pecuniary value of the child's services during his minority and the costs and expenses reasonably incurred by the father on account of the injuries, less the usual and reasonable expenses of caring for and rearing the child, including the cost of board, lodging, clothing and reasonable incidental expenses until the boy should reach the age of 20 years,— all of which pecuniary value to be reduced to its present worth." These instructions conform to the rule as to the measure of damages in such cases announced by this court in *Wada* v. *Associated Oil Co.*, 27 Haw. 671, 675, and correctly state the law as applied to the pleading and proof in this case. This opinion is not intended to give them any more extended application.

The evidence in the case at bar showed that the boy was born October 1, 1913, and died April 1, 1930. The remaining term of his minority during which his father would have been entitled to his services was therefore three years and six months. At the time of the accident the boy was

in the employ of the Radio Corporation of America as a messenger at $65 per month with pay for overtime at the same rate. The boy's regular employment required eight hours' work each day, and during each of the five days that he had been so employed he had added from three to four or more hours overtime. The job was the highest paid one he had ever held. Before that he had been working for the Pacific Cable Company at $60 per month and before that for the Aloha Building Company for from $40 to $45 per month. The boy's wages had been turned over by him to his father who had paid the expense of the boy's maintenance and the upkeep of his motorcycle at an average cost of about $20 or more per month. Three years before the father had bought the motorcycle for his son. A finding that the boy's prospective overtime earnings would have approximately offset the cost of his maintenance would have been justified by the evidence. This would have left the net value of the boy's services to his father $65 per month—the amount of his regular pay. According to the uncontradicted testimony of Mr. T. D. Collins, public accountant, the present worth of $65 per month computed for the period of the boy's minority would have been $2,098.85. Funeral expenses of $150 added to the foregoing amount show a total loss to the father upon the theory of the case as to the measure of damages submitted to the jury as above set forth of $2248.85. "Damages in cases of this kind are largely prospective and necessarily somewhat indefinite and incapable of being estimated with any approach to accuracy." *Ferreira* v. *Honolulu R. T. & L. Co.,* 16 Haw. 615, 629. In the case last above cited this court held that a verdict of $3000 in an action by a father for the death of his son is not so excessive as to require a new trial where there was evidence that the son was fifteen years old, healthy and strong, that he performed serv-

ices worth $25 a month to his father and which might be worth $35 a month to others, that he might earn $2 a day in the occupation in which his father was engaged, that the father had a wife and ten children, and that the funeral expenses were $216.50. Said the court: "In view of this evidence, although the damages seem rather large, we cannot say that they were so excessive as to require a new trial or a remittitur of part of the damages." *Id.*, p. 629. In the instant case the plaintiff's son was older and the remaining period of his minority shorter by one and one-half years than was the case in *Ferreira* v. *Honolulu R. T. & L. Co., supra.* On the other hand his earning capacity was greater but not sufficiently greater than the maximum testified to in the *Ferreira* case to give his services a present value as high as was given to those in the case last above cited. If the verdict had been for $2500 we think that the last foregoing quotation from the *Ferreira* case would be applicable to the case at bar. In this view the verdict was excessive to the extent of $2500.

4. Assignment No. 5 is thus set forth in defendant's specification of errors relied on: "That before and during the examination of the jury upon the voir dire the following occurred: 'The court: Call the jurors. (The names of 12 jurors were called and they were examined by counsel on their voir dire. During the examination Mr. Botts, counsel for the plaintiff, asked the following question, and the following proceedings were had): Q. Have any of you gentlemen any connection with the Bishop Insurance Agency? Mr. Anthony: Objected to, as it is asked simply and solely with the idea of prejudicing the jury. Mr. Botts: I will withdraw the question and ask the jury to disregard it. The court: So ordered. Mr. Anthony: May we have it entered in the record that this question was asked solely with the idea of prejudicing the jury? Mr. Botts was

cautioned about this before the examination began, and we assign it as error and ask that the jury be discharged. Mr. Botts: The question is one propounded for the purpose of intelligently exercising my peremptory challenges. Except for counsel's remarks, the question is innocuous. There is no covert suggestion made. Counsel is endeavoring to inject error into the record. I even withdrew the question and asked that the jury be instructed to disregard it, although I submit I have a perfect right to ask it. The court: Objection overruled. Mr. Anthony: Exception. The court: Exception noted. (A jury was duly empaneled to try the case.)' " This court is unanimous in the opinion that no error is shown in the foregoing assignment No. 5—the majority upon the ground that there could have been no prejudice because the question was withdrawn and the jury instructed to disregard it and because in any event the jury was not thereby informed that the defendant carried liability insurance, and the minority (the writer of this opinion), upon the ground that in any event the question does not appear to have been an improper one, for the reason that "the rule which excludes evidence that defendant in a personal-injury case is indemnified by liability insurance does not prohibit plaintiff's counsel from testing, within reasonable limits, and in good faith, the qualifications of proposed jurors in respect to their connection with, or interest in, any indemnification the defendant may have, or their interest in, or connection with, any company engaged in like business," in order that the right to challenge jurors peremptorily or for cause may be intelligently exercised. See extensive editorial note and citations on the subject of the "right to interrogate jurors on voir dire with reference to insurance," beginning on page 1454 and particularly on page 1459 of volume 56, A. L. R.

Upon plaintiff's filing in this court within ten days hereafter a remittitur in the sum of $2500, the cause will be remanded to the circuit court with direction to enter judgment for the sum of $2500 and costs; otherwise assignment of error No. 4, to the extent that it avers that the verdict is excessive, will be sustained and the cause remanded for a new trial.

*J. G. Anthony* (*Robertson & Castle* on the briefs) for plaintiff in error.

*E. J. Botts* (also on the brief) for defendant in error.